# CHARLESTON

GENTRY *v.* POTEET *et al.*

Submitted February 16, 1906.    Decided April 10, 1906.

1. ESTOPPEL—WHAT CONSTITUTES—*Agreed Statement of facts.*

Where an action of ejectment is brought and submitted upon an agreed statement of facts, and before the decision thereof the defendants move to withdraw such agreed statement of facts, and file a bill in equity setting up a matter of equity not cognizable in such action, and praying for an injunction restraining the prosecution of the action of ejectment, such agreed statement of facts will not estop them from setting up such equity and enjoining the prosecution of such action. (p. 412.)

2. TRUSTS—*Evidence.*

Where land is purchased and paid for by one who takes a title bond therefor and who dies before obtaining a deed, leaving surviving him a widow and children, and the widow, on account of such purchase, procures the vendor of her husband to convey the land to her, she will be treated in equity as a trustee, holding the legal title for the heirs, the equitable title thereto having, immediately upon the death of the father, vested in them, subject to the widow's dower. (p. 416 )

3. SAME—*Express Trust—Establishment.*

A verbal statement of one holding the equitable title to land to

the effect that he wants the same conveyed to his wife will not operate to pass the equitable title to her, and where, after the death of the husband, his vendor, on account of such statement, conveys the land to the widow, such deed does not thereby vest the equitable title to said land in the widow, but it will operate only to convey the legal title, to be held by her in trust for the heirs, which a court of equity will enforce, upon proper bill filed for that purpose.   (p. 416.)

4.  EQUITY—*Laches.*
     The plaintiffs and those under whom they claim are not guilty of *laches* in asserting their rights.   (p. 416.)


Appeal from Circuit Court, Fayette County.

Action by T. J. and C. D. Gentry against W. C. Poteet and Isabella Blake.  Judgment for complainants, and defendant Poteet appeals.

*Affirmed.*


R. T. HUBARD, JR., and DILLON & NUCKOLLS, for appellant.

PAYNE & HAMILTON, for appellees.

SANDERS, JUDGE:

Dickinson Blake, in 1872, purchased of A. B. Duncan two adjacent tracts of land in Fayette county, containing sixty and fifty-one acres, respectively, taking a title bond therefor. He paid the purchase money, entered into possession of the land, and resided thereon until his death, in 1877, but never obtained a deed.   Blake left surviving him his widow, Isabella Blake, and four infant children, and another child was born about six months after his death.   In December, 1879, Duncan conveyed the land so purchased by Blake from him to "Isabella Blake, widow of Dickinson Blake, and the heirs of her body by said Dickinson Blake, deceased."   By conveyances from two of the heirs of Dickinson Blake, a two-fifths undivided interest in this land passed to and was vested in C. T. and G. W. Jones, and by conveyance Ella D. Blake, one of the heirs, became the owner of an undivided one-fifth interest in the surface.   She retained the interest which descended to her, as did also Robert Blake, another of the heirs, and on the 18th day of October, 1899, C. T. and G. W. Jones and Robert and Ella D. Blake entered into an agree-

ment of partition, by which there was allotted to the two latter parties forty-one acres of the surface of said land.

On the 7th day of January, 1902, Robert and Ella D. Blake conveyed to T. J. and C. D. Gentry five acres of the surface of the land so acquired by them. This land was, in the year 1900, sold by the Blakes to Jerry Fitzpatrick, who made him a deed therefor, which, however, he failed to record. The Gentrys purchased from Fitzpatrick, and at the time of the purchase the deed to him was destroyed, and a deed taken as before stated. On the 27th day of February, 1904, the Gentrys procured a deed to the property from Fitzpatrick, and placed same upon record, thereby becoming vested with the title of the heirs of Dickinson Blake to the property.

On July 20, 1903, Isabella Blake conveyed to W. C. Poteet five acres of surface land. This is the same land which T. J. and C. D. Gentry acquired by their purchase, and subsequent deed, from Fitzpatrick.

In this condition of affairs, Poteet claiming under his deed from Isabella Blake, and the Gentrys claiming under the heirs of Dickinson Blake, W. C. Poteet brought, in August, 1903, in the circuit court of Fayette county, an action of ejectment against the appellees, T. J. and C. D. Gentry, to recover the tract of five acres, and on the 23rd day of February, 1904, the first day of the February term of the circuit court, the parties to the action of ejectment, by their attorneys, entered into an agreement by which it was provided that the action should be submitted for determination to the court, in lieu of a jury. The agreement stipulated that the defendants in the action claimed title to only five-sixths of the land in controversy, and disclaimed as to one-sixth; that the title to said land had been regularly derived from the Commonwealth, and that both parties claimed title under the conveyance from A. B. Duncan to Isabella Blake; that the only question to be determined was the legal construction of said deed—if the court should hold that it vested the fee simple title to the whole of the land in Isabella Blake, the judgment should be for the plaintiff; and if it should be held that it conveyed a joint estate to Isabella Blake and her children, then judgment should be for the defendants, except as to the one-sixth interest which they disclaimed.

Upon the agreement the case was argued and submitted for decision on February 24. On the morning of February 26, the defendants asked leave of the court to withdraw the agreement, on the ground of after discovered equities, and in support of their motion filed the affidavits of A. B. Duncan, C. D. Gentry and W. D. Payne. The record does not show that this motion was acted upon. On the 4th day of March, following, the defendants applied for and obtained an order restraining the plaintiff from using as evidence in the action of ejectment the deed made to him by Isabella Blake, and from further prosecuting the action until the further order of the court. In the bill filed, upon which this order was issued, it is alleged that the conveyance to Isabella Blake by Duncan vested in her only the legal title to the estate, and that the conveyance from her to Poteet was not upon valuable consideration, but was made for the purpose of enabling him to extort money from the plaintiffs in the bill. Poteet and Isabella Blake answered, controverting the construction placed upon the deed from Duncan to Mrs. Blake, and alleging that the transaction between them was *bona fide.*

On the final hearing, the court enjoined W. C. Poteet from using in the action of ejectment the deed from Isabella Blake to him, directed a conveyance by Poteet to the Gentrys of the five acres of land, and in default of his making the conveyance, appointed a commissioner to do so, but reserved the question as to whether or not Mrs. Blake had waived her right of dower, for further determination. From this decree W. C. Poteet has appealed.

The appellant contends that the demurrer to the bill should have been sustained. The first criticism of the bill is that it alleges that the plaintiffs are both the legal and equitable owners of the land, and if this be so, they had an adequate and complete remedy at law, by defending the action of ejectment. While it is true the plaintiffs in their bill allege they are informed and believe that they own both the legal and equitable title to the land, yet when the bill is construed in all its parts, it clearly appears that the defendants have only the equitable title, and that the legal title is held by Isabella Blake in trust for them. And it is urged that if the allegation of the bill is not true, and the plaintiffs do not have the legal title, they are not in a position to maintain a suit to re-

move a cloud, but, in order to maintain such suit, they should have the legal title, and actual possession.     This is unquestionably true, and has been decided by this Court repeatedly. But counsel for appellant seem to entirely misconceive the purpose and scope of the bill.   Its object is not to remove a cloud from the title, but to enforce a trust,    The gravamen of the bill is that Dickinson Blake purchased and paid for the land, in his life time, taking a title bond therefor, but died without having obtained a deed, and that after his death his vendor, Duncan, on account of such purchase, conveyed the land to Isabella Blake, his widow, and that this being so, she holds the naked legal title as trustee for the heirs of Dickinson Blake, which a court of equity will declare, and enforce in their favor.     This matter could only be set up in a court of equity, and the demurrer to the bill was properly overruled.

Complaint is made that the court erred in not dismissing the bill on the ground that the plaintiffs are estopped from setting up any matter inconsistent with their solemn agreement in the ejectment suit.   It is unnecessary to determine whether this agreement was withdrawn, or whether the defendants, in that action, had the right to do so.   It was made in the action of ejectment, for the trial and disposition of that case.   The matter of equity set up in the bill was not cognizable in such action, and the plaintiffs could not have set such matters up as a defense.   The agreement is not materially inconsistent with the matters set up in the bill.   Its material parts are that the title under which both plaintiff and defendants claim was regularly derived from the Commonwealth of Virginia; that both claim under the deed from Duncan to Isabella Blake, and that the only question in dispute and to be adjudicated was the legal construction to be placed upon the deed from Duncan to Isabella Blake, and that if the court in construing it should hold that the deed passed a fee simple title to the widow, then judgment should be given for the plaintiff, but on the other hand, if it should be so construed as to pass a joint estate to Isabella Blake and her children, then judgment should be given for the defendants.   By this agreement the controversy was so reduced as to invoke the judgment of the court upon the construction of the deed only. In other words, the true scope of this agreement was to place

the title papers before the court for construction and decision as to who had the legal title to the land. This did not and could not in any sense affect the equitable title of the defendants. The court was only called upon to pass on the question as to who had the legal title to the property. Not being able to set up such equitable defense in the action of ejectment, the fact that the appellees entered into an agreement whereby the judgment of the court was invoked upon the construction of certain title papers cannot destroy their right to resort to a court of equity to enforce the trust and require the conveyance of the legal title to them. None of the material facts of the agreement are controverted by the bill, but by it are practically admitted. The bill, however, goes further and shows that although the deed, upon its face, appears to pass a fee simple estate to Isabella Blake, yet, as Dickinson Blake, in his life time, acquired the equitable title to the land, and did not obtain a deed, the equitable title, subject to the widow's dower, immediately upon his death descended to and vested in his children, A. B. Duncan, his vendor, holding the legal title in trust for them, and he so holding the legal title, and having conveyed the same to Isabella Blake, she took nothing by the conveyance except the naked legal title as trustee for the heirs, which in equity she will be compelled to convey to them.

The appellant claims that under the deed from him to Isabella Blake, both the legal and equitable title passed to and vested in him. We deem it unnecessary to review the authorities to show that the deed from Duncan to Isabella Blake had the effect of passing to her a fee simple estate in the land. The words in the deed create an estate in fee-tail special, under the statute *de donis conditionalibus*. 1 Tucker's Comm., part 2 page 45; Bl. Comm., vol. 1, book 2, pages 111-114, which by our statute is converted into an estate in fee simple. Section 9, chapter 71, Code: "Every estate in lands so limited that, as the law was on the seventh day of October, in the year, one thousand, seven hundred and seventy-six, in the state of Virginia, such estate would have been an estate tail, shall be deemed an estate in fee simple; and every limitation upon such an estate shall be held valid, if the same would be valid when limited upon an estate in fee simple created by technical language." While this deed passed the

legal title to the land to Isabella Blake, and upon its face appears to have passed to her a fee simple estate, yet if her vendor only held the legal title in trust for the heirs of Dickinson Blake, it could only have the legal effect of passing to her such title as he held.    The facts conclusively show that Dickinson Blake, in his life time, purchased and paid for the land, taking a title bond therefor, and that after his death, on account of such purchase, Duncan conveyed the same to the widow, Isabella Blake.    If this were all, there could be no question but what the equitable title, immediately upon the death of the father, passed to and vested in the children, and the widow, having taken the deed to the land, a court of equity will declare her a trustee for the children, holding the legal title, and will compel her to convey the same to them, or their vendees.    But it is asserted that Dickinson Blake, before his death, authorized and directed a conveyance of this land to his wife, and that thereby the equitable title immediately became vested in her.  There is no claim, however, that Blake personally directed his vendor, Duncan, to convey the land to the wife, and what he did say upon this subject is difficult indeed to determine.    The evidence is vague, indefinite and uncertain.    Mrs. Blake, in her testimony, says that her husband, in his last sickness, had a conversation with her, his father, Adam Blake, and his brother, James Blake, in which he told them that he wanted the property deeded to her.    J. R. Huddleston testifies that Blake, during his last sickness, told him and his father, Adam Blake, that he wanted his father to go to Duncan and get a deed to his wife as long as she remained his widow.    L. J. Smith testifies that Blake, before his death, said that he wanted one Mahoney to take charge of and manage his property—that his wife had no business ability.    Viewing it, however, in the strongest light for the defendant, and assuming that Dickinson Blake made the statement which he is claimed by his widow to have made, it would not be such a promise or contract as could be enforced, even in his life time.    To do so would be in violation of the Statute of Frauds, and it not being capable of enforcement, it is difficult to see how the equitable title, by reason of such statements, could vest in the widow.    The most that can be claimed is that it was a gift to the wife, which remained wholly unexecuted, and which was revocable at the

pleasure of the donor, and it not having been executed by Blake in his life time, and not being such promise as could be enforced by the widow, the equitable title, immediately upon his death, vested in his heirs.  The case of *Coleman* v. *Cocke*, 6 Rand. 618, is cited as authority to sustain the position that upon the request of the husband to. convey the land to the wife, the equitable title thereby immediately was transferred to and vested in her.  There, the father, who had purchased the land and held the equitable title, directed the vendor to convey the same to his son, which was done in the life time of the father, and the son conveyed a part of the same to a brother, and the brother conveyed a part of the land which was conveyed to him to another, for a valuable consideration, and the question arose between a creditor of the father, and the purchaser for a valuable consideration, as to who had the prior equity, and the court held that the equity of the purchaser was paramount, and in dealing with the question, said: "The equitable title of the father was not transferred to the son by the execution of the deeds to him by the Cockes, but by the previous authority given by him to them to execute those deeds.  And if such an authority had been given by the letter, and the deeds never made, a *bona fide* purchaser of the equitable interest from Wm. A. Bentley would have had a better right now to call upon the Cockes for their conveyance of the legal title, than any creditor of Wm. Bentley getting a judgment against him after the transfer of his equitable right to his son.  Such a transfer was valid without deed, and was not necessary to be recorded to make it available against his creditors."  In what way this transfer by the father to the son was made, does not clearly appear, but we observe from the quotation above that it is said, "if such authority had been given by the *letter*, and the deeds never made, a *bona fide* purchaser of the equitable interest from Wm. A. Bentley would have had a better right," etc.  And then, again, it is said that such a transfer was valid without deed, and was not necessary to be recorded, to make it available against creditors.  Therefore, from these statements of the opinion, it would seem that there had been a written request by the father to his vendor to convey to the son.

Again, in that case, the gift by the father to the son had

been fully consummated by the vendor carrying into effect the direction given by the father. This being so, it had the effect of passing both the legal and equitable title to the son, whether the equitable title had been previously transferred to the son by the father or not. Where the gift or direction is not executed, then it is not susceptible of enforcement unless it be such as to transfer the equitable title, and the test as to whether or not the equitable title was transferred by the promise here, is whether or not Isabella Blake would have had the right to have enforced such promise. If she could not have specifically enforced it, then it could not have the effect of transferring to her the equitable title. Did she have such right? This was a verbal promise, without valuable consideration, and to have enforced it would have been in direct violation of the Statute of Frauds, and would also mean nothing more nor less than that one can, by verbal direction, control the disposition of his property after death. If the gift or promise had been carried into effect by Duncan, in the life time of the husband, conveying the land to the wife, then the conveyance would have had the effect of passing both the legal and equitable title to her. While the promise, it is true, was verbal, and not such as could be enforced by the wife, yet if the land had been conveyed by direction of the husband, he would be estopped to deny that he had given such direction.

It is true that Duncan, after the death of Blake, upon her request conveyed the land to the widow, but the conveyance not having been made in the life time of Dickinson Blake, and the promise or gift not being such as could be enforced, and not having passed to Isabella Blake the equitable title to the land, immediately upon the death of Dickinson Blake the legal title passed to and vested in his heirs, and this being so, the conveyance by Duncan to Isabella Blake only operated to convey to her the legal title, which was held by him as trustee, and being so held by him, would upon a conveyance to her be likewise held in trust by her for the heirs.

It is charged that the plaintiffs, and those under whom they claim, are guilty of *laches*, and for this reason they should be denied relief. Upon what claim this assignment is predicated, we do not know. No reasons are given by counsel to support it, and there is nothing appearing in the record to

vindicate this position. As we have observed, the widow held only the legal title to the land, in trust for the heirs. She, together with her children, lived upon the land until it was sold to Fitzpatrick, and ever since then it has been in possession of Fitzpatrick and the plaintiffs claiming under him. It is difficult to arrive at any other conclusion from the testimony of Isabella Blake alone but that she has all along since her husband's death, recognized the equitable title as being in the heirs. At the time of the father's death, the oldest child was only eight years old, the youngest being born about six months thereafter. And at the time they became of age, or shortly thereafter, they began to dispose of their respective interests in this land, which apparently met with the approval of their mother. Nothing to the contrary was asserted, and just in what way the delay in bringing this suit to extract the legal title and vest it in the heirs, could affect her, is difficult to determine. Then, again, W. C. Poteet, claiming under her, is in no position to complain. He is not a purchaser without notice and for a valuable consideration. And not only this, but he married one of the heirs of Dickinson Blake about twenty years ago, lived with the family a great deal of the time, and from his testimony we must conclude that he was perfectly familiar with the title, and with all the facts and circumstances surrounding it. He knew the heirs and those holding under them were claiming the land, at the time he took his deed. In fact, he joined with his wife, one of the heirs, in conveying all her right, title and interest in this land, thereby recognizing her interest therein. Also, at the time he took his conveyance, this land had been conveyed by the heirs, and the deeds of conveyance had been put upon record.

Complaint is made that the court, upon the final hearing, read the *ex parte* affidavits of A. B. Duncan, C. D. Gentry and W. D. Payne. Whether or not this was error it is entirely unnecessary to determine, because, upon the whole case, it is perfectly clear that the decree was proper. Exclude the affidavits, and the result would have been the same. Therefore, if it was error to read them, it was certainly not prejudicial to the defendants.

Upon the whole case, the decree is right, and is affirmed.

*Affirmed.*